MARTHA WEBB, *et al.*, plaintiffs in error, *vs.* LAFAYETTE HARP, defendant in error.

Where a plaintiff in *fi. fa.* had a lot of cotton, mules, etc., levied upon, and pending the levy, it was agreed between him and the defendant, that he should release the property from the levy and return it to the defendant, and should enter the execution fully satisfied, in consideration, that defendant would convey to him a tract of land, with certain personal property, in payment of the *fi. fa.*, and in compliance with said agreement, plaintiff released and restored the property levied upon, which was sufficient to have satisfied the *fi. fa.*, to the defendant, and the defendant delivered to the plaintiff possession of the land and personal property, and turned over to him the title papers, and was to make him a deed as soon as they could get it drawn, and defendant died soon after, without making the deed, and his widow, who was admitted to be insolvent, after the end of the year, finding the premises vacant, took possession, claiming the land for her husband's estate, and commenced proceedings in the Superior Court to have her dower allowed out of the same, there being no legal representative of her husband's estate, and plaintiff filed his bill alleging these facts, and praying that she be restrained from trespassing upon the land, and from prosecuting her action for dower, until a legal representative of the estate was appointed: *Held*, that it was not error in the Judge who granted the injunction to overrule a motion to dissolve it, and to hold it up, until the hearing of the bill, placing his decision on the ground of restraining the trespass above.

Injunction against trespass.   Before Judge WORRILL. Chattahoochee Superior Court.   March Term, 1869.

Harp, by his bill, made this case: In 1868 he owned a judgment against E. G. Webb, amounting to say $1,200 00 and had the *fi. fa.*, founded on it, levied upon seven bales of cotton, two mules, a tract of land, and other of E. G. Webb's property, sufficient to pay the *fi. fa.*  At the date of the levy

cotton was worth ten or twelve and a half cents per pound. By military order, sales under *fi. fas.* were prohibited. The price of cotton was much higher in the spring, and then E. G. Webb and he made the following contract: Webb proposed to convey to him lot of land No. 18, in the 5th district of said county, in full payment of said judgment. Harp proposed to release the personalty levied on, and that the sheriff should return it to Webb, and then to satisfy the judgment, if Webb would convey to him said lot, and give him also $50 00, a cotton-gin, a wheat-fan, and an order on the county treasurer for $30 00. Webb accepted this proposition, and in pursuance of the contract, paid Harp the $50 00, delivered him the order, the gin and the fan, and his chain of title to said lot, and possession of the lot, and received back the personalty levied on from the sheriff by Harp's consent. Harp released the personalty from the *fi. fa.* At that time cotton had advanced, and the personalty alone was worth sufficient to pay the judgment. The sheriff had other younger judgments against Webb, and had his property been sold by the sheriff, all its proceeds would have been exhausted by the judgments. By said trade, Webb sold the cotton for a large price, and with the proceeds and mules supported his family. Webb, at the time of said contract, agreed to make Harp a deed to said lot, but because of said younger judgments, such a deed would not make Harp's title good, and, therefore, Harp and Webb agreed that said lot should be sold under Harp's *fi. fa.*, that Harp should buy it, and thus perfect the title. The Stay-Ordinance of the Convention of 1867–8 prevented this sale, and before a sale could be made, Webb died.

He left a wife, Martha Webb, and several children, one of whom, Wesley, perhaps, was of age. No one has administered on Webb's estate; the estate is insolvent, and so are said Martha and Wesley. Said Martha, without the knowledge or consent of Harp, took possession of said lot and she and Wesley are preparing to cultivate it. If they do this, it will damage Harp $75 00. Besides this, said Martha has applied to the Superior Court for an assignment of dower out of

said lot. Because the release paid the judgment, because it was kept open in fact only to perfect the title, and because of the said insolvency, Harp prayed that Martha and Wesley should be enjoined from trespassing on said lot by cultivating it or otherwise depriving Harp of the free use of it.

The injunction was granted. Defendants moved to dissolve it, because there was no equity in the bill, because Harp was not entitled to the relief prayed for and because the injunction was improvidently granted.

The Chancellor overruled the motion, solely upon the ground that the defendants should be restrained from said trespass. This is brought here for review.

BLANDFORD & MILLER, (by JAMES RUSSEL) for plaintiffs in error.

E. G. RAIFORD, D. H. BURTS, *contra*, cited Irwin's Code, section 3153; 36 *Ga. R.*, 76, 97, 659, as to the power and discretion of the Chancellor in such cases.

BROWN, C. J.

From the report of this case, and the head note, (which contains the written decision made by this Court during the term,) there is no difficulty in understanding the point decided without further elaboration here. The complainant's bill sets up a strong equity in his favor, and, as it is admitted that the defendants, who have taken possession of, and are trespassing upon the property, are insolvent, and unable to respond in damages, we think the Court did not err in refusing to dissolve the injunction on that ground. See Revised Code, section 3153.

Judgment affirmed.